IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LLOYD McCOG | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-05-CV-2100-M |
| DOUGLAS DRETKE, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Lloyd McCog, appearing *pro se*, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

Petitioner was convicted by a jury of capital murder and sentenced to life imprisonment.[1] His conviction and sentence were affirmed on direct appeal. *McCog v. State*, No. 05-03-00921-CR, 2004 WL 1089201 (Tex. App.--Dallas, May 17, 2004, pet. ref'd). Petitioner also filed an application for state post-conviction relief. The application was denied without written order. *Ex parte McCog*, No. 62,397-01 (Tex. Crim. App. Sept. 28, 2005). Petitioner then filed this action in federal court.

II.

In multiple grounds for relief, petitioner contends that: (1) the trial court lacked jurisdiction; (2) the evidence was legally and factually insufficient to support his conviction; (3) he received

---

[1] The state did not seek the death penalty.

ineffective assistance of counsel; and (4) his conviction was obtained by the use of perjured testimony.

A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where, as here, a state court has already rejected the claims raised by petitioner, a federal court may grant habeas relief only if the state court adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). An unreasonable application of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*, 120 S.Ct. at 1523; *see also Pondexter v. Dretke*, 346 F.3d 142, 145-46 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 2160 (2004). Stated differently, "a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003), *quoting Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).

With respect to mixed questions of fact and law, a federal habeas court must give deference to state court findings unless they are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir.), *cert. denied*, 121 S.Ct. 508 (2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

B.

Petitioner first contends that the trial court lacked jurisdiction because he was indicted by a grand jury empaneled by the 204th Judicial District Court, but was tried in the 282nd Judicial District Court. Evidently, petitioner believes that a formal order is required to transfer a case from one court to another. Such is not the case. The Texas Constitution permits a state district judge to exchange districts or hold court for any other district judge. *See* TEX. CONST. art. V, § 11. A formal order of transfer is not necessary. *Davila v. State*, 651 S.W.2d 797, 799 (Tex. Crim. App. 1983); *Pendleton v. State*, 434 S.W.2d 694, 696-97 (Tex. Crim. App. 1968). *See also Hayes v. Johnson*, No. 3-00-CV-2716-H, op. at 10 (N.D. Tex. Apr. 18, 2001) (Kaplan, J.), *rec. adopted* (N.D. Tex. May 10, 2001), *COA denied*, No. 01-10699 (5th Cir. Oct. 11, 2001), *cert. denied*, 122 S.Ct. 1975 (2002) (rejecting identical claim on federal habeas review). This ground for relief is without merit and should be overruled.

C.

In two grounds for relief, petitioner argues that the evidence was legally and factually insufficient to support his conviction. More particularly, petitioner alleges that: (1) his sister, Ginger Miller, who testified that petitioner admitted to killing a "military guy" in 1976, was impeached by

a prior inconsistent statement; (2) his fingerprints were not found inside the victim's truck; and (3) the state failed to prove the time the murder occurred.

1.

The court initially observes that a claim based on factually insufficient evidence is not cognizable under 28 U.S.C. § 2254. Under Texas law, intermediate appellate courts have the authority to review fact questions in criminal cases. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). This "factual sufficiency" review of the evidence is broader than a "legal sufficiency" challenge under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Instead of viewing the evidence in the light most favorable to the prosecution and determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," a factual sufficiency inquiry views all the evidence to determine whether the verdict "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Pruitt v. Cockrell*, No. 3-00-CV-1713-H, 2001 WL 1115339 at *13 (N.D. Tex. Sept. 14, 2001), *quoting Clewis*, 922 S.W.2d at 129, *and Stone v. State*, 823 S.W.2d 375, 381 (Tex. App. -- Austin 1992, pet. ref'd, untimely filed). The power of state appellate courts to review the factual sufficiency of the evidence derives from Texas statutory and constitutional authority. *Id.*, 2001 WL 1115339 at *14, *citing Clewis*, 922 S.W.2d at 129-30, *and Bigby v. State*, 892 S.W.2d 864, 874-75 (Tex. Crim. App. 1994), *cert. denied*, 115 S.Ct. 2617 (1995). There is no corresponding right of review under the United States Constitution. *Id.*

2.

Petitioner also argues that the evidence was legally insufficient to support his conviction. Federal habeas review of a legal sufficiency claim is extremely limited. A federal court may not disturb a state criminal conviction unless no rational trier of fact could have found the elements of

the offense beyond a reasonable doubt. *Jackson*, 99 S.Ct. at 2789; *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991), *cert. denied*, 113 S.Ct. 102 (1992). The evidence must be viewed in the light most favorable to the verdict. *Jackson*, 99 S.Ct. at 2789; *Gibson*, 947 F.2d at 781. This standard of review applies in both direct and circumstantial evidence cases. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir.), *cert. denied*, 111 S.Ct. 265 (1990).

Federal courts are bound by state statutes and case law in determining the elements of an offense. *Foy v. Donnelly*, 959 F.2d 1307, 1314 (5th Cir. 1992). The Texas statute defines capital murder as intentionally or knowingly causing the death of an individual in the course of committing or attempting to commit certain enumerated offenses, including robbery. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp. 2004). The evidence adduced at trial, which was correctly summarized by the court of appeals in its opinion, shows that Jerry Lackey, a retired Army veteran, was found dead and lying on the side of the road in front of his pickup truck near Mountain Creek Lake on the morning of September 10, 1976. Lackey had been severely beaten and shot in the thigh and head, his pockets were turned inside out, and he had no wallet or identification. Police officers recovered fingerprints and palm prints from the truck bed and tailgate, but were unable to identify the prints. In 1991, using new technology, the police determined that the fingerprints recovered from Lackey's truck belonged to petitioner. However, the investigation remained dormant for another 10 years.

Petitioner was indicted for capital murder in November 2002. At trial, his half-sister, Jacklyn "Ginger" Miller, testified that petitioner told her in 1976 that he had killed a "military guy." According to Miller, petitioner, who often hitchhiked around town, boasted that he took the victim to the lake, beat and robbed him, then shot him in the head. Petitioner then showed Miller a wallet containing a driver's license and credit cards. He told Miller the wallet belonged to the victim. Sometime in the early 1980s, Miller mentioned the murder to petitioner in a letter. Petitioner told

Miller never to bring up the matter again. In 1985, petitioner threatened Miller and began parking outside her workplace for hours a time. Miller then told Bob Irby, a family friend and Dallas police detective, about petitioner's confession.

Viewing the evidence in the light most favorable to the verdict, the state court determined that "a rational jury could have found the essential elements of the crime of capital murder in this case beyond a reasonable doubt." *McCog*, 2004 WL 1089201 at *3. Petitioner has failed to show that this decision is unreasonable in light of the evidence presented at trial. Miller's testimony, which was believed by the jury, establishes that petitioner took Lackey to a lake, beat and robbed him, and shot him in the head. Petitioner showed Miller a wallet he said belonged to the victim. His fingerprints were recovered from the bed and tailgate of Lackey's truck. Although petitioner's prints were not found inside the truck and there is some question as to whether Lackey picked up petitioner while hitchhiking, the evidence nevertheless was legally insufficient to establish that petitioner murdered Lackey while in the course of committing robbery. These grounds for relief should be overruled.

D.

Petitioner further alleges that the performance of his attorney was constitutionally deficient in numerous respects. In particular, petitioner complains that counsel:  (1) did not object to the trial court's jurisdiction; (2) failed to properly argue the insufficiency of the evidence on direct appeal; (3) did not introduce Miller's prior statement into evidence; (4) advised him to reject a 40-year plea offer; (5) failed to call two defense witnesses to testify that Miller had a vendetta against him; and (5) did not hire an expert.

1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. The Fifth Circuit has described that standard as "requiring that counsel research relevant facts and law, or make an informed decision that certain avenues will not be fruitful." *United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005), *quoting United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Strickland*, 104 S.Ct. at 2067. Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068; *see also Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (habeas petitioner must show that trial result was unreliable or proceeding fundamentally unfair due to deficient performance of counsel).

2.

The first three instances of ineffective assistance of counsel cited by petitioner are either conclusively negated by the record or patently frivolous. Because a formal transfer order is not required to confer jurisdiction on the trial court and the evidence was legally sufficient to support

petitioner's conviction, counsel was not ineffective for failing to challenge the trial court's jurisdiction or make different arguments regarding the sufficiency of the evidence. In addition, the jury was informed of the prior statement made by Ginger Miller, even if the statement itself was not admitted into evidence. On cross-examination, counsel asked Miller:

> Q. [BY DEFENSE COUNSEL]: Didn't you tell the police that Lloyd was the driver and the other individual was the hitchhiker and Lloyd picked up the hitchhiker.
>
> A. No, I didn't say that Lloyd--
>
> \* \* \* \*
>
> Q. Ma'am, let me--let me ask you to read your statement. Is this your statement?
>
> A. Yes, it is.
>
> Q. Okay. And I want you to read your statement. Don't read it out loud, read your statement and refresh your memory.
>
> A. Okay.
>
> (The witness complies.)
>
> A. Yes, sir, that's what I said.
>
> Q. And in your statement, did you not say that Lloyd was the driver and the other individual was the hitchhiker?
>
> \* \* \* \*
>
> A. He told me he picked the guy up hitchhiking. He said he picked a guy up hitchhiking. He took him to the lake. That's what I said.

(SF-V at 102-04). These grounds are without merit and should be overruled.[2]

---

[2] Contrary to petitioner's argument, there was nothing inconsistent about the statement Miller gave to the police and her testimony at trial. That was made clear to the jury on re-direct examination:

3.

Petitioner also criticizes his attorney for advising him to reject a 40-year plea offer, for not calling two defense witnesses, and for failing to hire a fingerprint expert. In a sworn affidavit filed with the state habeas court, Kenneth Weatherspoon, counsel for petitioner, testified that he told his client that 40 years "was not a bad offer." However, petitioner insisted that he was not guilty and made the decision to go to trial. Weatherspoon denied ever promising or guaranteeing a particular result. With respect to defense witnesses, Weatherspoon acknowledged that both Jennifer McCog and Robin Headspeth would have testified to the animosity between petitioner and his half-sister, Ginger Miller. However, Weatherspoon feared that their testimony would have allowed the state to introduce evidence of petitioner's criminal record and prior bad acts, including an incident where he stabbed a man. In addition, neither McCog nor Headspeth had any personal knowledge concerning the case. Weatherspoon further explained that there was no need to hire an expert because "[t]he basis of the defense theory was it was not [petitioner] who committed the offense, and he was not there." The only evidence placing petitioner at the murder scene came from the state's fingerprint

---

Q. [BY PROSECUTOR]: Now, Ms. Miller, you said your brother's exact words about hitchhiking were what exactly?

A.    He said, "I picked up a guy hitchhiking."

Q.    And I'm--is this your statement?

A.    Yes, it is.

Q.    If you would, look at the last line . . . Those were your exact words?

A.    Uh-huh, he picked up a guy hitchhiking.

Q.    And those are the words you put in your statement?

A.    Yes.

(SF-V at 104-05).

expert. Because that expert was unable to determine when petitioner's fingerprints were placed on the victim's truck, there was nothing for a defense expert to rebut. (*See* St. Hab. Tr. at 130-31).

The state habeas court considered this evidence and found that "Mr. Weatherspoon is credible and his affidavit is worthy of belief." (*Id.* at 126). In so finding, the state court implicitly rejected petitioner's testimony that Weatherspoon promised he could "beat the case." (*See id.* at 24). Petitioner has failed to rebut this credibility determination by clear and convincing evidence. *See Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir.), *cert. denied*, 114 S.Ct. 637 (1993), *citing Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982) (habeas statute obliges federal judges to respect credibility determinations made by the trier of fact). The state court further determined that Weatherspoon "exercised his informed professional judgment" in not calling Jennifer McCog and Robin Headspeth as witnesses, and was not ineffective for failing to present a fingerprint expert. (*See* St. Hab. Tr. at 127-28). Petitioner has failed to establish that these strategic decisions, made after a reasonable investigation, were "so ill chosen that [they] permeate[d] the entire trial with obvious unfairness." *Green*, 116 F.3d at 1122. Nor has petitioner shown that the outcome of the trial would have been different had McCog, Headspeth, and a fingerprint expert testified. This ground for relief should be overruled.

E.

Finally, petitioner contends that his conviction was obtained by the use of perjured testimony. The due process clause prohibits the use of perjured testimony to obtain a conviction. *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *Black v. Collins*, 962 F.2d 394, 407 (5th Cir.), *cert. denied*, 112 S.Ct. 2983 (1992). In order to establish a due process violation based on the use of perjured testimony, a habeas petitioner must prove that: (1) the testimony was false; (2) the prosecutor knew it was false; and (3) the evidence was material.

*Blackmon v. Scott*, 22 F.3d 560, 565 (5th Cir.), *cert. denied*, 115 S.Ct. 671 (1994).

Here, there is absolutely no evidence that any witness lied at trial, much less that the prosecutor knew such testimony was false. At most, there was conflicting evidence as to whether the victim picked up petitioner while hitchhiking and minor discrepancies regarding the education and employment history of the medical examiner. Such contradictions, standing alone, are not tantamount to perjury. *See United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989); *King v. Dretke*, No. 3-05-CV-0995-B, 2005 WL 2316433 at *3 (N.D. Tex. Sept. 20, 2005), *rec. adopted*, 2005 WL 2547060 (N.D. Tex. Oct. 11, 2005).

## RECOMMENDATION

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 1, 2006.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE